UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Brian Hale,

Petitioner,

vs. REPORT AND RECOMMENDATION

Rob Mundt,

Respondent. Civ. No. 00-2306 (DSD/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 13th day of June, 2001.

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus. See, Title 28 U.S.C. §2241. The Petitioner has appeared pro se, and the Respondent has appeared by Joseph T. Walbran, Assistant United States Attorney.

For reasons which follow, we recommend that the Petition for Habeas Corpus be denied.

II. Factual and Procedural History

The Petitioner is currently serving a 30-month prison term, which was imposed by the United States District Court for the District of Kansas, in the Federal Correctional Institution in Waseca,

JUN 13 2001
FILED
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

10

Minnesota. On February 3, 2000, Senior Officer Specialist Ray Shumway ("Shumway") was conducting a search of the Petitioner's room, which he shared with three other inmates. The Petitioner contends that the search was the result of an anonymous informant's tip concerning locker #9-116-U. At that time, Shumway discovered a homemade weapon taped to the backside of locker #9-116-U. The locker was apparently assigned to one of the inmates, other than the Petitioner. Nonetheless, none of the inmates claimed ownership of the weapon, which was a plastic knife, approximately seven inches in length, that had a razor melted and taped to its cutting edge.

Based upon that discovery, an incident report was written, which charged the Petitioner with possession of a weapon, code #104. Specifically, the Petitioner was charged with violating the following provision:

> Possession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive or any ammunition[.]

Bureau of Prison ("BOP") Program Statement ("P.S.") 5270.07, Chapter 4, at 5; see also 28 C.F.R. §541.13, Table 3.

The Unit Disciplinary Committee referred the charge to the Disciplinary Hearing Officer ("DHO") for a fact-finding Hearing.

A copy of the Incident Report was given to the Petitioner on February 3, 2000. Prior to the Hearing, on February 14, 2000, the

Petitioner requested information on the nature of the "tip" which, he believes, precipitated the search of his room. Specifically, the Petitioner asked if there was a tip or "snitch note" directing the search and seizure of the knife, whether the tip was from an anonymous or confidential informant, whether the tip was directed toward any particular inmate assigned to the room, how soon after the tip was received was the search initiated, and whether the Petitioner could obtain a copy of the note or tip. See, Attachment to Petition for Writ of Habeas Corpus. The Prison officials denied the request for information, based on BOP P.S. 5570.09, which directs that inmates are not allowed to have access to any information that could threaten the orderly running or security of the institution. Id.

A Hearing on the incident was held on March 22, 2000. For the DHO Hearing, the Petitioner requested, and did have a staff representative appear, and the representative made a statement on the Petitioner's behalf. The Petitioner did not request any witnesses, however. At the conclusion of the Hearing, the DHO made a finding that the greater weight of the evidence supported the determination that the Petitioner committed the prohibited act as charged. The DHO sanctioned the Petitioner to forty days loss of good conduct time, and thirty days disciplinary segregation, which was suspended pending 180 days of clear conduct.

In regard to this incident, and to the sanction imposed, the Petitioner makes a number of challenges. First, he asserts that he was denied his right to confront his accuser -- the tipster -- and to prepare his defense, as he did not receive, and was unable to use, exculpatory evidence which he believes was contained in a Special Investigative Supervisor's ("SIS") Report. See, Petition for Writ of Habeas Corpus, at 3. Next, he contends that he was denied his right to an impartial fact finder, and was found guilty of an offense that was not supported by the evidence. Id. He also contends that he was denied the right to challenge the evidence. Id. Finally, he asserts that he was denied his right to equal protection, due to a number of procedural due process violations. Id. As relief for these alleged violations, the Petitioner requests that his good time credit be restored.

## III. Discussion

A. Standard of Review. The Fifth Amendment prohibits the Federal Government from depriving a person of life, liberty, or property without the due process of law. While it is true that the constitutional protections, which are encompassed by the due process clause, do not abate at the time of imprisonment, see, Hudson v. Palmer, 468 U.S. 517, 539 (1984) (O'Connor, J., concurring), it is also true that "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retrac-

tion justified by the considerations underlying our penal system." Sandin v. Conner, 515 U.S. 472, 485 (1995), quoting Jones v. North Carolina Prisoners' Labor Union, Inc., supra at 125, quoting in turn Price v. Johnston, 334 U.S. 266, 285 (1948).

Although prison disciplinary proceedings often implicate liberty interests, they are not criminal Trials and, therefore, they do not involve the full panoply of procedural and substantive protections that are available in criminal proceedings. See, Wolff v. McDonnell, 418 U.S. 539, 567-68 (1974). Nevertheless, in Wolff, the Supreme Court enumerated the minimum due process requirements of a prison disciplinary proceeding as follows:

> 1. Written notice of the claimed violation must be given to the prisoner at least 24 hours prior to the hearing;
>
> 2. A written statement must be compiled by the factfinder describing the evidence relied upon and the reasons for the findings and disciplinary action;
>
> 3. The prisoner should be permitted to call witnesses and to present evidence in defense of the charges, unless doing so would jeopardize institutional safety or correctional goals; and
>
> 4. Where the inmate is illiterate, or the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or have adequate substitute aid in the form of help from the

> staff or from a sufficiently competent inmate designated by the staff.

Id. at 563-70.

Beyond these procedural due process considerations, the Supreme Court has determined that, in order to comply with constitutional due process, at least "some evidence" must support the finding of a disciplinary sanction. See, Superintendent v. Hill, 472 U.S. 445, 455 (1985). As explained by the Court:

> This standard is met if there is some evidence from which the conclusion of the administrative tribunal could be deduced. * * * Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Id. at 455; see also, Goff v. Dailey, 991 F.2d 1437, 1440 (8th Cir. 1993).

B. Legal Analysis. After reviewing the Record, in light of the asserted due process violations, we believe that Petitioner was provided adequate procedural due process protections, which complied with Wolff. First, he was given written notice of the charge, in the form of an incident report, well in excess of 24 hours prior to his appearance before the DHO. See, Attachment B to Declaration of Sue Pedersen. The Hearing Officer, Sue Pedersen, was not involved in the writing of the incident report, nor did she witness the events which precipitated the report. See, Declaration

of Sue Pedersen, at ¶5. Other than the Petitioner's bare assertion of bias on her behalf, there is no evidence that she was not an impartial decision maker. Moreover, although the Petitioner did not chose to call a witness, there was no evidence that he was prevented from doing so and, in fact, he was advised of his right to call witnesses. See, Attachment B & F to Declaration of Sue Pedersen. He was also allowed to have a representative -- a staff member -- help him with his defense, and that representative appeared at the Hearing. See, Attachment B, F & G to Declaration of Sue Pedersen.

Moreover, after reviewing the evidence which was presented at the Hearing, it is clear that there was a "some evidence" to conclude that the Petitioner was guilty of the offense charged. The Hearing included a picture of both the locker and weapon at issue. See, Attachment B to Declaration of Sue Pedersen. According to the incident report, the weapon at issue was found in the Petitioner's room, which he shares with three other inmates. None of the inmates claimed ownership of the knife, and all inmates are charged with the responsibility of keeping their rooms free from contraband. See, P.S 5270.07, Attachment C to Declaration of Sue Pedersen. Therefore, according to BOP policy, all four inmates who shared the room were determined to have "constructive possession," and, consequently, all four were charged with the offense. Under

these circumstances, the "constructive possession" rule has been determined by the Courts to satisfy the requisite "some evidence" required by due process. See, Mason v. Sargent, 898 F.2d 679, 680 (8th Cir. 1990)(probability of misconduct by one out of two inmates was sufficient to apply a "constructive possession" rule); Hamilton v. O'Leary, 976 F.2d 341, 346 (7th Cir. 1992)(one in four chance of being responsible for contraband meets the "some evidence" standard); Thompson v. Hawk, 978 F. Supp. 1421, 1423-24 (D. Kan. 1997) (one in two chance that an inmate harbored a weapon satisfied "some evidence" rule). Thus, we find there was "some evidence" to conclude that the Petitioner committed the offense for which he was charged, and he was therefore not denied due process of law in that regard.

With respect to the Petitioner's assertion that he was denied due process, because he was unable to confront his accuser -- that is, the individual who allegedly made the tip -- we reiterate that the Fifth Amendment does not require full criminal Trials in the prison setting. See, Wolff v. McDonnell, supra at 567-68. Although the Petitioner may have had a right to exculpatory evidence, see, Chavis v. Rowe, 642 F.2d 1281, 1285-86 (7th Cir. 1981), there is no automatic right to all of the evidence against him. See, Wolff v. McDonnell, supra at 566. Indeed, a prisoner's ability to call witnesses, to present evidence, and to confront witnesses, may

be circumscribed when allowing the exercise of those right would be unduly hazardous to institutional safety or correctional goals. See, Ponte v. Real, 471 U.S. 491, 495-96 (1985); Baxter v. Palmigiano, 425 U.S. 308, 321 (1976); Wolff v. McDonnell, supra at 566.

We believe that allowing an inmate to know the identity of a possible informant is the type of information which presents a danger to institutional safety and correctional goals. Such information could foster assaults targeted at informants, and could also discourage other inmates from voicing their concerns over the wrongful conduct of fellow inmates. See, e.g., Wolff v. McDonnell, supra at 584 (Marshall, J. concurring in part and dissenting in part)("The right to call a particular witness could also justifiably be limited if necessary to protect a confidential informant against a substantial risk of reprisal."); Hudson v. Hedgepeth, 92 F.3d 748, 750 (8th Cir. 1996)(due process not violated where the name of a confidential informant is withheld from inmate to protect institutional safety). Thus, we do not believe that the withholding of any informant's identity from the Petitioner denied him due process.

The Petitioner further contends that exculpatory evidence, in the form of a SIS report, was withheld from him, thereby violating the dictates of Chavis v. Rowe, supra. The Petitioner bases this contention, that such a report exists, on the fact that, when he

was released from segregation, he was told that there was an extensive and thorough investigation performed, and that it established his innocence. However, according to the Respondent, there was no SIS investigation into the incident regarding the Petitioner. See, Declaration of Connie Friedrichs, at ¶4. Moreover, the Petitioner has not provided any other information that such an investigation, or report, existed. Therefore, we do not believe that the Petitioner's due process rights were violated by the BOP's failure to provide him exculpatory evidence, as it appears that no such evidence existed.[1] Thus, finding no due process violations, and we recommend that the Petition for Writ of Habeas Corpus be denied.

NOW, THEREFORE, It is --

---

[1]The Petitioner also contends that his right to equal protection of the laws was violated. Generally, the right to equal protection requires that the government treat similarly situated individuals in a similar manner. See, City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432. The Petitioner has not provided any evidence, however, of how he was treated differently than a similarly situated inmate, other than his assertion that the BOP violated his right to due process, which has already been addressed. In fact, the other inmates who resided in the Petitioner's room at the time of the incident were apparently subjected to the same treatment as the Petitioner. Therefore, we find no basis to determine that the BOP violated the Petitioner's right to equal protection of the laws.

RECOMMENDED:

That the Petition for Writ of Habeas Corpus [Docket No. 1] be denied.

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than June 29, 2001,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than June 29, 2001,** unless all interested parties stipu-late that the District Court is not required by Title 28 U.S.C. §636 to

review the transcript in order to resolve all of the objections made.